CITY COUNCIL OF WALTHAM *vs.* SALVATORE A. VINCIULLO
& others.

Middlesex.    November 7, 1973.—February 20, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Equity Pleading and Practice,* Zoning appeal. *Statute,* Retroactive statute, Construction. *Zoning,* Variance.

Discussion of retroactive statutes. [625-628]

The right of a city council to appeal from a decision by the city's zoning board of appeals to the Superior Court under G. L. c. 40A, § 21, was to be determined as of the time of the board's decision, so that such an appeal by the council should not have been dismissed for want of standing of the council by reason of St. 1969, c. 706, amending § 21, where the decision of the board and the taking of the appeal both occurred before the effective date of c. 706. [628-629]

A decision by a city's zoning board of appeals granting a variance allowing replacement of two existing buildings having eight apartments on a certain parcel of land with a new building having up to thirty-one apartments must be annulled for want of substantial hardship where it appeared that a new building of up to nine apartments could be constructed on the parcel without a variance and that the existing apartments were occupied, although the existing buildings were in need of expensive repairs which might require increased rents beyond the means of the then tenants and the existing return from the property was less than fair. [629-631]

BILL IN EQUITY filed in the Superior Court on July 14, 1969.
The suit was heard by *Taveira,* J.

*William J. Bannan, Jr.,* City Solicitor (*Howard A. Reynolds,* Legal Assistant to the City Solicitor, with him) for the City Council of Waltham.

*Robert S. Marsh* for Salvatore A. Vinciullo & another.

*Arthur H. Sullivan* for the Board of Appeals of Waltham.

TAURO, C.J. The city council of Waltham (council) filed a bill in equity by way of appeal from a decision of the board of appeals of Waltham (board) granting a zoning variance requested by the Vinciullos (defendants). The bill was filed on July 14, 1969, pursuant to G. L. c. 40A, § 21, as amended through St. 1960, c. 365.[1] On August 9, 1971, after a trial, a Superior Court judge ruled that there had been no showing of substantial hardship especially affecting the property in question, within the meaning of G. L. c. 40A, § 15, which would result from enforcement of the zoning regulations. The judge therefore ordered the entry of a decree annulling the variance granted by the board. Prior to the entry of the final decree, however, the defendants moved to vacate the judge's rulings and order. The defendants contended that, by virtue of St. 1969, c. 706,[2] which was approved and became effective while this case was pending,[3] the council no longer had standing to maintain a suit under c. 40A, § 21. The judge agreed and vacated his previous order for a decree and instead ordered the entry of a final decree dismissing the bill, from which the plaintiff appeals.

We first consider whether the deletion by St. 1969, c. 706, of municipal boards from § 21 bars the plaintiff council from maintaining a suit which it had begun prior to the

---

[1]At the time the bill was filed § 21 permitted appeals to the Superior Court by "[a]ny person aggrieved by a decision of the board of appeals . . . or any municipal officer or board . . .."

[2]Statute 1969, c. 706, amended G. L. c. 40A, § 21, by, inter alia, deleting the reference to "any municipal . . . board," as one of the parties which may appeal to the Superior Court.

[3]Statute 1969, c. 706, was approved on August 14, 1969, and became effective ninety days thereafter (art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, I).

statutory change.[4] The trial judge relied on a rule of statutory interpretation that attributes prospective application to statutes affecting substantive rights and retroactive application to statutes affecting remedies and procedures. This rule was stated by Chief Justice Rugg in *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3 (1914): "The general rule of interpretation is that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations. Doubtless all legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action." The judge determined that St. 1969, c. 706, merely effected "a change in parties entitled to appeal" and thus was "procedural or remedial." He therefore concluded that, under the rule just stated, c. 706 applied retroactively to deprive the city council of standing to appeal from a decision of the board of appeals. We hold that the judge's conclusion was incorrect.

This court has many times applied the "general rule of interpretation" quoted above.[5] That the rule is far easier to state than it is to apply, however, is evidenced by the diffi-

[4]The defendants contend that the council was not a proper plaintiff even under the earlier language of § 21. See *Carr* v. *Board of Appeals of Medford,* 334 Mass. 77, 79-80 (1956). But no such challenge was raised below, and it cannot be raised here for the first time. *Lyon* v. *Bloomfield,* 355 Mass. 738, 743 (1969). For purposes of this decision, therefore, we shall assume that the council had standing as a "municipal . . . board" within the original wording of § 21. Thus, the only issue properly before us is whether the council's standing in this suit under § 21 was extinguished by St. 1969, c. 706.

[5]We note that this rule of interpretation is underpinned by constitutional limitations on the extent to which laws may operate retroactively. See *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 5-7 (1914). No constitutional issue is here presented, however, and this case is to be decided solely as a matter of statutory interpretation.

culty which this court has experienced in its attempts to distinguish statutes affecting "substantive rights" from those affecting "only procedures and remedies."[6] The cases reviewed in fn. 6 do not offer any concrete standards by which we are to determine whether St. 1969, c. 706, affects substantive rights or is merely procedural or remedial. There is no need, however, for us to resolve this question as we hold that c. 706 has no application in this case, regardless of its proper characterization as "procedural" or "substantive."

There are, of course, limitations to the extent to which even procedural or remedial statutes will operate retroactively. At the extreme, no "retroactive" procedural statute could apply to a case which has been closed, i.e., has gone to judgment and either been affirmed on appeal or not been appealed within the time allowed for appeal. But even as to cases which are still pending in the courts, there will be some point at which it becomes inappropriate to apply newly enacted procedural changes. For example, in *Martell* v. *Moffatt,* 276 Mass. 174 (1931), two appeals from decrees of the Probate Court were ordered dismissed because of the appellant's failure to comply with certain statutorily imposed procedural requirements for maintaining such an appeal. In affirming the dismissal of the appeals, this court declined to consider the provisions of a statute, enacted after argument but before decision, which materially altered the procedural requirements of the earlier statute. It was said that: "[the] amending statute relates to procedure and not to substantive rights and applies, therefore, to cases pending at the time it

---

[6]Compare, e.g., *Kagan* v. *United Vacuum Appliance Corp.* 357 Mass. 680 (1970) (G. L. c. 223A, the long arm statute, is "remedial" and thus will be applied retroactively), with *Paraboschi* v. *Shaw,* 258 Mass. 531 (1927) (statute making registrar of motor vehicles agent for service of process on nonresident drivers affects substantive rights, and thus can be applied prospectively only). Compare *Bemis* v. *Clark,* 11 Pick. 452 (1831) (statute adding remedy of abatement to previously available remedy of damages in nuisance actions is remedial, and thus abatement may be ordered in an action begun prior to the statute), with *Cudlassi* v. *MacFarland,* 304 Mass. 612 (1939) (statute changing recovery from double damages to damages will not be applied retroactively to a pending case because to do so would destroy the "vested right" to double damages which arose at the time of the injury). Compare also *Garfield* v. *Bemis,* 2 Allen 445 (1861), with *Lindberg* v. *State Tax Commn.* 335 Mass. 141 (1956), and with *Sanford* v. *Hampden Paint & Chem. Co.* 179 Mass. 10 (1901).

became effective. . . . But the rights of the parties on this record must be determined according to the statutory practice and procedure in force at the time the decision of the judge now under review was made, and not according to that which would have been in force if such decision were to be made now." 276 Mass. at 178.

Even closer to the issue presented in the instant case are several of our decisions determining the extent to which statutory amendments to the rules of evidence would operate retroactively. As to evidentiary statutes "remedial" in nature, we have held that they "are applicable to all causes coming on for trial after they became operative, whether the cause of action arose before, or after, and whether the writ was brought before, or after, the statutes became operative, unless a contrary legislative design is plainly expressed." *Smith* v. *Freedman,* 268 Mass. 38, 41 (1929). Thus, no litigant has a right to have applied at his trial the particular statutes of this character in effect at the time his cause of action arose or even at the time his case was filed in court. On the other hand, once a trial has begun, practical considerations of efficiency and finality dictate that such a statute then in effect will control the trial itself and will be the standard used in any subsequent appellate review of the trial. Although "retroactive" in its operation on past events, the evidentiary statute would nevertheless not apply to court proceedings commenced and under way prior to the statute's effective date.

The cases just discussed suggest that statutes which are remedial or procedural should be deemed to apply retroactively to those pending cases which, on the effective date of the statute, have not yet gone beyond the procedural stage to which the statute pertains. This approach gives the broadest application to legislatively mandated procedural changes without subjecting each completed step in the course of a litigation to the uncertainty of possible future legislative changes. In the present case, the council had standing to appeal under G. L. c. 40A, § 21, at the time the board made its decision (June, 1969) and at the time the appeal process was

actually initiated (July, 1969). Statute 1969, c. 706, eliminating municipal boards as appealing parties under § 21, was not approved until August, 1969, and was not effective until ninety days after its approval. Because the council's standing under § 21 should properly have been determined as of the date of the decision being appealed from, we hold that c. 706 should not have been applied retroactively to invalidate the council's appeal. Any retroactive operation of c. 706 should be limited to those cases in which, on the effective date of the statute, no decision had yet been made by the board of appeals.[7]

It can be argued that this result is buttressed by considerations of fairness. An appeal under § 21 must be brought within twenty days after the decision of the board has been filed with the city clerk. The council's bill was filed within this time period. Because at that time there was no reason to believe that the council's appeal would not be decided on the merits, it is entirely possible that other parties who were entitled to appeal under § 21 decided not to do so in reliance on the city council's apparently proper appeal. If the dismissal of this appeal stands, then no review of the decision of the board will be possible under § 21. This result would be particularly harsh here since the trial judge has already ruled that the board acted improperly in granting the variance.

Our holding that the city council's appeal should not have been dismissed for lack of standing requires that the final decree below be vacated. The judge permitted to remain in effect his initial findings and rulings and the evidence is reported. Therefore, the record is sufficient to permit a proper review of the judge's ruling, namely, that the granting of the variance was in excess of the authority of the board because there was not shown to be "a present substantial

---

[7]The necessity of having a definite point at which the retroactive operation of statutes is cut off is exemplified by the present case. Five days before the judge issued his "supplementary" ruling that c. 706 applied retroactively to oust the council's appeal, St. 1972, c. 334, was approved expressly adding "city council[s]" to the list of parties which may appeal under § 21. If c. 706 were to be applied to invalidate an appeal initiated prior to its enactment, then arguably c. 334 should be applied retroactively to reinstate that appeal. The rule we have stated avoids this confusion.

hardship especially affecting the premises within the meaning of . . . [G. L. c. 40A, § 15]."

The findings of the judge are summarized. The property as to which the Vinciullos requested a variance is a parcel of 20,360 square feet located in a Residence C zoning district of Waltham. There currently are two separate four-apartment houses on the property. The variance requested was to permit the construction of a single apartment building containing not more than thirty-one apartments. The minimum area required for such a building under Residence C zoning district requirements is 57,250 square feet. A nine-apartment building could be constructed on the property under Residence C standards. After taking a view of the property, the judge found that the buildings were in fair to poor condition and badly in need of repair. There was evidence that renovation of the buildings would cost $48,000, which expenditure would require rents to be raised to a level beyond that which the present tenants would be willing to pay. The apartments were occupied and there was no evidence of vacancies caused by the condition of the buildings. Other than a requirement that the Vinciullos install rear exits (at a cost of $3,600), there was no evidence that any public authority had declared the buildings unfit for habitation. In the years 1967 and 1968 the return on the buildings was 3.4% and 3.5%, which the judge found to be less than a fair return.

Based on this evidence, the judge concluded that since the existing buildings were usable and in fact were occupied, there was no substantial hardship especially affecting the premises.[8] The fact that the owner's profits from the buildings were declining did not constitute a hardship permitting a variance. He found further support for his conclusion in the fact that a new building of up to nine apartments could be constructed without a variance.

There was evidence to support the judge's ruling on the issue of hardship. There was no evidence tending to show that the property in issue is "subject to special disadvantages

[8]See G. L. c. 40A, § 15.

or peculiarities affecting its availability for permitted uses.'' *Abbott* v. *Appleton Nursing Home, Inc.* 355 Mass. 217, 221 (1969). The Vinciullos intend to demolish the existing structures, not to modify or alter them, so this is not a request for a variance with respect to an existing building. Thus, *Johnson* v. *Board of Appeals of Wareham,* 360 Mass. 872 (1972), cited by the defendants, is not in point. The facts that the two buildings now on the property are in need of costly repairs, that such repairs might require increased rents which are beyond the means of the present tenants, and that the present income from the buildings is low, are all evidence of the desirability of making some change in the present use of the property. None of those facts, however, supports a conclusion that the property cannot feasibly be used in conformity with the zoning regulations.[9] There is no substantial hardship merely because there may be expense involved in continuing an existing use, see *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, 41 (1969), or because higher profits may result from a nonconforming use, see *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 450 (1956). See also *Bruzzese* v. *Board of Appeals of Hingham,* 343 Mass. 421, 424 (1962). Compare *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 530 (1958).

The judge's finding that no substantial hardship will result from literal enforcement of the zoning regulations ''is fatal to the defendants' case.'' *Vainas* v. *Board of Appeals of Lynn,* 337 Mass. 591, 594 (1958). ''Since there was no substantial hardship, we need not consider whether the other requirements of G. L. c. 40A, § 15, cl. 3, were satisfied.'' *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, 41 (1969).

The final decree is reversed and a new decree is to be entered adjudging that the decision of the board was in excess of its authority and is annulled.

*So ordered.*

---

[9]To rule otherwise would make it possible for a property owner to obtain a variance merely by permitting his property to deteriorate and become unprofitable. Such a result would tend to negate the effectiveness of zoning schemes.