MASSACHUSETTS ASSOCIATION FOR THE BLIND *vs.* BOARD OF
ASSESSORS OF BROOKLINE.

Suffolk. November 7, 1983. — March 13, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & O'CONNOR, JJ.

*Taxation,* Real estate tax: exemption, abatement. *Taxation,* Appellate Tax
Board: jurisdiction. *Statute,* Retroactivity. *Charity.*

Statute 1977, § 198, which amended G. L. c. 59, § 59, to provide that an owner
who acquired title to real property after January 1 in any year shall be treated
as the assessed owner for that year, was applicable to permit the Appellate
Tax Board to entertain an appeal pending on the date the statute took effect.
[388-392]
The Appellate Tax Board, on remand of a charitable corporation's appeal from
the denial of a real estate tax abatement, was to consider whether the appeal
was barred by the corporation's failure to file with the Attorney General the
annual report required by G. L. c. 12, § 8F.  [393]

APPEAL from a decision of the Appellate Tax Board.
*James Roosevelt, Jr. (David C. Boch* with him) for the taxpayer.
*Casimir deRham, Jr. (Deborah J. Hall & Perry E. Israel* with
him) for the Board of Assessors of Brookline.
ABRAMS, J.   The Massachusetts Association for the Blind (as-
sociation) appeals from a decision of the Appellate Tax Board
(board) dismissing for lack of jurisdiction the association's appeal
from the denial of an abatement of a $35,600 real estate tax as-
sessed for the 1977 fiscal year on property acquired by the associ-
ation in 1976.  The application was filed with the assessors on Oc-
tober 31, 1980, pursuant to St. 1980, c. 560,[1] which authorized
abatement applications by charitable organizations that, because
of a failure to file a list of property required under G. L. c. 59, § 29[2]

---

[1] Statute 1980, c. 560, was approved July 16, 1980, and became effective
October 15, 1980.

[2] General Laws c. 59, § 29, as amended by St. 1963, c. 160, §§ 17, 18, requires
"all persons subject to taxation in their respective towns," with exceptions not

(Form 3 ABC), were ineligible for a charitable exemption under G. L. c. 59, § 5, Third,[3] during any year encompassed in the period beginning January 1, 1969, and ending June 30, 1980.[4] Under St. 1980, c. 560, such charitable organizations were permitted to submit abatement applications provided that the requisite Form 3 ABC was filed on or before November 1, 1980, and that "but for the failure to file said list with the respective assessors for taxable years [1969-1980], [the organization] would have received a property tax exemption in said years."[5]

here material, to submit on an annual basis itemized lists of all property not exempt from taxation as well as "all real and personal estate held . . . for literary, temperance, benevolent, charitable, or scientific purposes on January first preceding." The statute was further amended by St. 1977, c. 992, §§ 4, 5, which among other changes, included, for fiscal years commencing July 1, 1978, a requirement that property held for educational purposes also be itemized.

[3] General Laws c. 59, § 5, Third (b), as amended by St. 1974, c. 811, provides, in relevant part, that "a charitable organization shall not be exempt [under this clause] for any year in which it omits to bring in to the assessors the list and statement [Form 3 ABC] required by [G. L. c. 59, § 29] and a certification under oath that the report for such year required by [G. L. c. 12, § 8F] has been filed with the division of public charities in the department of the attorney general."

[4] General Laws c. 59, § 5, Third (b), as appearing in St. 1957, c. 500, § 1, precluded exemption under that clause only if a charitable organization otherwise eligible "wilfully" omitted to file the required forms. A subsequent amendment removed the word "wilfully," thus disqualifying from exemption under clause Third any organization failing to file the forms. G. L. c. 59, § 5, Third, as amended by St. 1970, c. 219, § 1. A series of statutes enacted after the 1970 amendment restored to eligibility charitable organizations denied exemption during particular years by reason of their failure to submit the necessary documents. Statute 1980, c. 560, is such a statute.

[5] The full text of St. 1980, c. 560, states: "Notwithstanding the provisions of paragraph (b) of clause Third of section five of chapter fifty-nine of the General Laws, a charitable organization, as defined in said clause Third or a trust established by a declaration of trust executed in the commonwealth and coming within said definition of a charitable organization in said clause Third, shall be eligible for the exemption provided in said section five for the taxable years during the period commencing January first, nineteen hundred and sixty-nine and ending June thirtieth, nineteen hundred and eighty, provided that the list of property required by section twenty-nine of said chapter fifty-nine is filed on or before November first, nineteen hundred and eighty, and all other requirements for such exemption are complied with.

"A charitable organization or a trust defined as aforesaid which files the required list of property on or before November first, nineteen hundred and eighty, and, but for the failure to file said list with the respective assessors for taxable

The association, which had unsuccessfully attempted to obtain an abatement of the fiscal year 1977 tax in a proceeding involving an application for abatement filed in 1976, submitted the requisite Form 3 ABC[6] with its 1980 abatement application. On January 23, 1981, the assessors denied the abatement. The association appealed under formal procedure to the board. After hearing oral argument on a petition to dismiss filed by the assessors, the board, on January 22, 1982, dismissed the association's appeal for lack of jurisdiction. The board subsequently issued its findings of fact and report. The association appeals to this court pursuant to G. L. c. 58A, § 13. We remand the case to the board for further proceedings.

The following factual findings by the board are not disputed. The tax was assessed to St. Dominic's Institute, Inc. (St. Dominic's), a Massachusetts corporation organized under G. L. c. 180, which, on January 1, 1976, was the owner of record of the property. The association purchased the property from St. Dominic's on June 26, 1976. St. Dominic's, as the "person . . . assessed," filed an application for abatement on October 15, 1976.[7] See G. L. c. 59, § 59, as amended through St. 1974, c. 831, § 4. In compliance with G. L. c. 59, § 57, as amended through St. 1976, c. 250, § 1, permitting payment without interest of the tax in two installments due November 1 (or thirty days after the bill was sent) and May 1, the association paid one half of the tax on November 1, 1976. On or about January 11, 1977,

years during the period commencing January first, nineteen hundred and sixty-nine and ending June thirtieth, nineteen hundred and eighty, would have received a property tax exemption in said years, may file an application for an abatement of any property taxes assessed or paid in said taxable years in the manner provided by section fifty-nine of said chapter fifty-nine on or before November first, nineteen hundred and eighty; and, if such charitable organization or trust would otherwise be eligible for such exemption, the taxes so assessed or paid shall be abated."

[6] The association filed both a Form 3 ABC in its own name and a Form 3 ABC for St. Dominic's Institute, Inc., which owned the assessed property on January 1, 1976. The board concluded that the form required to maintain eligibility for a fiscal year 1977 exemption under G. L. c. 59, § 5, Third, was the form in St. Dominic's name.

[7] The record does not indicate the date on which the tax bill was mailed to St. Dominic's. The assessors do not dispute that St. Dominic's application for abatement was timely.

391 Mass. 384                                             387

Massachusetts Association for the Blind v. Board of Assessors of Brookline.

the assessors notified St. Dominic's that its application for abatement had been denied. On April 8, 1977, the association filed an appeal in its own name from the assessors' refusal to abate the tax and, eighteen days later, made timely payment of the second instalment of the tax.

The assessors filed a plea in bar with the board on September 16, 1977, alleging that, because the tax had not been assessed to the association, payment of the entire tax was a prerequisite to the association's right to appeal the denial of the abatement under G. L. c. 59, § 59, and that, the association having paid only one half of the tax before appealing, the board lacked jurisdiction over the appeal. The assessors also claimed as jurisdictional defects the omission to submit a certification that an annual report (Form PC) had been filed with the Attorney General as required by G. L. c. 12, § 8F,[8] and the failure to file Form 3 ABC. On November 4, 1977, prior to a determination by the board of the jurisdictional issue, the association withdrew its appeal.

The board concluded that St. 1980, c. 560, did not revive the association's right to apply for an abatement of the 1977 tax[9] because the association would have been precluded from obtaining an abatement for that year even if the Form 3 ABC had been filed. At the time the 1977 appeal was filed, G. L. c. 59, § 59, as amended through St. 1974, c. 831, § 4, provided in pertinent part: "A person upon whom a tax has been assessed . . ., if aggrieved by such tax, may . . . apply in writing to the assessors . . . for an abatement thereof . . . . If a person other than the person to whom a tax on real estate is assessed is the owner thereof, or has an interest therein, or is in possession thereof, and *pays the tax,* he may thereafter prosecute in his own name any application, appeal or action provided by law for the abatement or recovery of such tax, which after the payment thereof

---

[8] See note 3, *supra.*

[9] It is undisputed that the association's 1980 application was untimely unless authorized by St. 1980, c. 560. See G. L. c. 59, § 59 (application for abatement must be made on or before October first of year to which tax relates or on or before the thirtieth day after date on which bill or notice of assessment sent).

shall be deemed for the purposes of such application, appeal or action, to have been assessed to the person so paying the same. The holder of a mortgage on real estate who has paid not less than one-half of the tax thereon may . . . apply in the manner above set forth for an abatement . . . [and] thereafter prosecute any appeal or action provided by law for the abatement or recovery of such tax in the same manner and subject to the same conditions as a person aggrieved by a tax assessed upon him'' (emphasis supplied). The board concluded that the statutory requirement that a nonassessed owner pay ''the tax'' prior to prosecuting an appeal necessitated payment of the entire tax, and held that the association's timely payment of the tax in compliance with the payment schedule permitted under G. L. c. 59, § 57, was insufficient to confer jurisdiction upon the board over the association's 1977 appeal. The board also concluded that St. 1977, c. 198,[10] was not applicable to that appeal.[11]

We agree with the board that, prior to the 1977 amendment, § 59 required a nonassessed owner to make full payment of the tax before appealing. The short answer to the association's claim to the contrary is that § 59 authorizes a mortgage holder ''who has paid not less than one-half of the tax'' to apply for an abatement in the interim between September 20 and October 1 of the fiscal year for which the tax is assessed. Where the statute

---

[10] Statute 1977, c. 198, which became effective August 19, 1977, amended G. L. c. 59, § 59, by adding a proviso that ''[n]otwithstanding any other provision of this section, a person who acquires title to real estate after January first in any year, shall for purposes of this section be treated as a person upon whom a tax has been assessed.'' The board has jurisdiction over an appeal by an assessed owner if timely instalment payments are made. G. L. c. 59, § 64, as amended through St. 1975, c. 677, § 1.

[11] In their brief and at oral argument, the assessors argued that the issue whether the association was required to pay the entire tax is controlled by this court's decision in *Brookline Sav. Bank* v. *Assessors of Acton,* 374 Mass. 829 (1978). That case was an order for summary affirmance of a decision by the Appellate Tax Board. No rescript ''containing a brief statement of the grounds and reasons of the decision,'' see G. L. c. 211, § 8, was filed by the court. Because knowledge of the facts and issues in cases decided by summary order is not uniformly available to all persons, these orders may not be used as precedent. Exceptions to this rule are limited to issues such as collateral estoppel, issue preclusion (res judicata), and law of the case because these issues turn on the binding effect of the judgment and not on the order's value as precedent.

explicitly creates a category of nonassessed persons entitled to commence abatement proceedings by paying "not less that one-half of the tax," we cannot construe the requirement that a different category of persons pay *"the* tax" as being satisfied by the payment of half the tax prior to initial involvement in the abatement process.[12]

At the time the Legislature amended the sections on the jurisdictional requirements for appeals by "person[s] aggrieved," it did not change the jurisdictional requisites of § 59 for the prosecution of abatement requests by nonassessed parties. See *Boston Five Cents Sav. Bank* v. *Assessors of Boston,* 313 Mass. 762, 768 (1943). We cannot interpret the meaning of "pays the tax" to entitle the association to appeal by following the instalment payment schedule where the Legislature made no such provision. The Legislature did not elect to place abatement proceedings involving nonassessed owners on a jurisdictional par with those involving assessed owners until it amended § 59 by St. 1977, c. 198.[13] The board did not, therefore, have jurisdiction over the association's 1977 appeal unless St. 1977, c. 198, was applicable to that appeal. See note 10, *supra.*

We disagree, however, with the board's conclusion that St. 1977, c. 198, was not applicable to the association's appeal. The

---

[12] We note additionally that the "pays the tax" requirement of § 59 governed (and, with respect to nonassessed persons not encompassed by the St. 1977, c. 198, amendment, still governs) not only the board's jurisdiction over an appeal, but also the assessors' jurisdiction over abatement applications submitted by persons other than assessed owners.

The association's interpretation of "pays the tax' as being satisfied by timely payment under the G. L. c. 59, § 57, schedule would lead to the absurd result that the assessors' jurisdiction over such applications might not be established until after the assessors' authority to act on the application had expired. Compare G. L. c. 59, § 64 (assessors' authority to act expires three months from date of filing of application), with G. L. c. 59, § 57 (second instalment of tax payable up to May 1 of calendar year following year in which bills are sent out).

[13] In a recommendation accompanying the draft of the bill that was enacted as St. 1977, c. 198, the State Tax Commission noted that G. L. c. 59, § 59, as then effective, required a person other than the person to whom the tax was assessed "to pay the entire tax due before he may apply for an abatement." 1977 House Doc. No. 251, at 7. The commission described the amendment as intended to "equalize the treatment afforded persons who acquire title to real estate after January 1st in any year with the treatment afforded persons who are owners of record on January 1st of that year."

applicability of a statute to cases pending on its effective date often turns on whether the statute affects procedural or substantive rights. See *Goodwin Bros. Leasing* v. *Nousis,* 373 Mass. 169, 173 (1977). The board concluded that the statute affected substantive rights by creating a "new class" of "person[s] aggrieved," namely persons acquiring title to assessed property after January 1 and electing to pay the tax in two instalments. However, it can be argued with equal vigor that the statute merely altered the time at which tax payments were due from a preexisting class of "person[s] aggrieved." i.e., persons acquiring title after January 1 and paying the tax. In this case, as in others, the distinction between "substantive" and "procedural" is elusive. See *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 626-627 (1974); *Lindberg* v. *State Tax Comm'n,* 335 Mass. 141, 143 (1956). Because the remedial nature of the statute is apparent, and because, in our view, application of the statute would not necessarily interfere with the substantive rights of the assessors or of the town of Brookline, we hold that the statute operated to validate the 1977 claim of appeal.

We note initially that the statutory language itself suggests a legislative intent to make the statutory provisions applicable to cases pending on the effective date. The statute requires that a person acquiring title after January 1 "in any year" be treated as an assessed owner for that year. Absent language explicitly resuscitating a concluded or expired cause of action, cf. St. 1980, c. 560; *Mulligan* v. *Hilton,* 305 Mass. 5, 8-9 (1940), we would not read "in any year" as applicable "to a case which has been closed, i.e., has gone to judgment and either been affirmed on appeal or not been appealed within the time allowed for appeal," *City Council of Waltham* v. *Vinciullo, supra* at 627. However, the association's appeal had not been conclusively adjudicated at the time the statute became operative.[14]

The year during which the association acquired the property is literally subsumed in the phrase "in any year." We can think of no reason why St. 1977, c. 198, did not by its express terms entitle the association to be treated on a jurisdictional par with

---

[14] The assessors' plea in bar was not filed until after the effective date of St. 1977, c. 198.

an assessed owner for the purposes of the pending appeal. See *E.B. Horn Co.* v. *Assessors of Boston,* 321 Mass. 579, 582-583 (1947); *Wynn* v. *Assessors of Boston,* 281 Mass. 245, 250, 251 (1932). Further, "statutes which are remedial or procedural should be deemed to apply retroactively to those pending cases which, on the effective date of the statute, have not yet gone beyond the procedural stage to which the statute pertains." *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 628 (1974). "Where . . . the statute regulates practice, procedure or evidence, as distinguished from substantive rights, it will commonly be applied to actions already pending." *Goodwin Bros. Leasing* v. *Nousis,* 373 Mass. 169, 173 (1977).

A contrary conclusion is inconsistent with the statute's remedial purposes. The pre-1977 requirement that a nonassessed owner, unlike an assessed owner, make full payment before appealing to the board has been described by one commentator as a "trap for the unwary," an "unintentional by-product," of the shift from annual to semiannual property tax bills. E. Hines, State and Local Taxation, 1975 Ann. Survey Mass. Law § 11.5, at 214. Statute 1977, c. 198, was enacted in response to the clear need for legislative action to eliminate this "trap." See E. Hines, State and Local Taxation, *supra,* and note 13, *supra.* Application of St. 1977, c. 198, to salvage the undismissed appeal[15] of a. victim of that "trap" would effectuate the objective of granting "the broadest application to legislatively mandated procedural changes without subjecting each *completed* step in the course of a litigation to the uncertainty of possible future legislative changes" (emphasis added). *City Council of Waltham* v. *Vinciullo, supra* at 628.

---

[15] It is undisputed that the assessors had jurisdiction over the abatement application, which was filed in compliance with G. L. c. 59, § 59, by St. Dominic's, the assessed owner. The sole question before us is whether St. 1977, c. 198, was enacted in time to confer jurisdiction upon the board over the association's undecided appeal from the assessors' decision. Cf. *City Council of Waltham* v. *Vinciullo, supra* (statute effective after entry of decree by Superior Court judge annulling variance granted by zoning board did not retroactively alter plaintiff's standing to appeal to Superior Court); *Martell* v. *Moffatt,* 276 Mass. 174 (1931) (statute effective after appeal dismissed did not retroactively validate appeal).

The assessors claim that a retroactive application of St. 1977, c. 198, would disturb vested rights by "depriv[ing] the Town of Brookline of tax receipts to which it became absolutely entitled on April 11, 1977," the last date on which the association could have filed an appeal complying with the jurisdictional requisites in effect prior to the 1977 amendment.[16] The 1977 amendment did not affect the town's presumptive entitlement to collect the assessed tax, nor did it confer upon the taxpayer a right to an abatement on substantive principles not in existence under prior law. See *E.B. Horn Co.* v. *Assessors of Boston,* 321 Mass. 579, 582 (1947). The amendment merely made less onerous the conditions under which a nonassessed owner could obtain a hearing on the merits of the assessors' denial of an abatement and ensured that the right to appeal should not be inadvertently lost because of a transfer of ownership. No vested property rights are affected by the retroactive application of a statute affecting a taxpayer's right to appeal to the board. *E.B. Horn Co.* v. *Assessors of Boston, supra* at 584. The town retains its substantive right to collect the tax, subject only to the qualification that the board might determine that the denial of an abatement was erroneous.[17]

The result we reach "is buttressed by considerations of fairness." *City Council of Waltham* v. *Vinciullo, supra* at 629. Neither the town nor the assessors were prejudiced in any way by the fact that the otherwise timely payment of the second instalment of the tax was not received until after the association's appeal was filed. See *Boston Five Cents Sav. Bank* v. *Assessors of Boston,* 311 Mass. 415, 420 (1942). By contrast, a prospective application of St. 1977, c. 198, would have the harsh effect of denying the association a hearing on the merits of its 1980 application because of a technicality acknowledged by the Legislature to be obsolete while the 1977 appeal was pending. Neither precedent nor policy counsel such a result.

---

[16] The assessors denied the abatement on January 11, 1977. An appeal must be filed within three months of the assessors' decision. G. L. c. 59, § 64.

[17] The assessors do not suggest that St. 1980, c. 560, or similar statutes reviving otherwise expired rights to an abatement, see *Children's Hosp. Medical Center* v. *Assessors of Boston,* 388 Mass. 832, 838 (1983), are unconstitutional. The assessors' assertion that retroactive application of St. 1977, c. 198, would defeat a claim to the 1977 tax that became "absolute" on April 11, 1977, is therefore ill-founded.

Our conclusion that the board's jurisdiction over the abatement appeals was not divested by the association's failure to pay the entire tax before filing the 1977 appeal does not end the jurisdictional inquiry. The board's opinion refers to "other jurisdictional problems [with the association's 1977 appeal] which are not addressed in this Opinion for the reason that its failure to pay 'the tax' before filing its appeal is alone sufficient reason for the Board to decline jurisdiction." The board specifically mentioned the failure of St. Dominic's or the association to provide certification that Form PC had been filed.[18] The board did not, however, rely on this potential defect in dismissing the appeal, and it is unclear from the record whether the association was given an opportunity to argue fully that question before the board. We therefore remand the case to the board for a full hearing on the effect of the omission on the board's jurisdiction. See *Children's Hosp. Medical Center* v. *Assessors of Boston,* 388 Mass. 832, 843 (1983).[19] This matter is remanded to the board for proceedings consistent with this opinion.

*So ordered.*

---

[18] Subsequent to the 1977 application and appeal, G. L. c. 59, § 5, Third (*b*), was amended to require a "true copy" of Form PC rather than a certification that Form PC had been filed. St. 1977, c. 992, § 2.

[19] Property held for "religious purpose[s]" is exempt from the Form PC filing requirement. G. L. c. 12, § 8F. We cannot on this record exclude the possibility that the association may be able to establish a factual predicate for a conclusion that St. Dominic's was using the property for purposes "religious" within the meaning of G. L. c. 12, § 8F, yet simultaneously "charitable" within the meaning of G. L. c. 59, § 5, Third. See *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph,* 334 Mass. 530 (1956) (properly owned by religious organization and used for religious education exempt under clause Third). As defined in the regulations promulgated by the division of public charities of the office of the Attorney General effective at the time of the 1977 appeal, the "religious purpose[s]" exemption to G. L. c. 12, § 8F, was sufficiently broad to encompass some uses of property that might qualify the property for clause Third exemption. At oral argument, the association asserted that the practice of the Attorney General's office is to refuse Form PC's filed by organizations with a religious name such as St. Dominic's.

If the association can establish that St. Dominic's was entitled to a clause Third exemption, and that the Attorney General's office would not have required or accepted the filing of a Form PC, we do not think that St. Dominic's or the association can be faulted for the failure to file, or that such omission would operate as a jurisdictional bar to the 1980 application.