APPEALS COURT 
 
 SARA CLINE & others[1] vs. PLANNING BOARD OF FRAMINGHAM & others[2]

 
 Docket:
 24-P-160
 
 
 Dates:
 January 6, 2025 – October 16, 2025
 
 
 Present:
 Englander, Hodgens, & Smyth, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Zoning, Appeal, Person aggrieved, Special permit. Practice, Civil, Zoning appeal, Standing, Summary judgment. Municipal Corporations, Planning board.
 
 

       Civil action commenced in the Superior
Court Department on September 21, 2021.
      The case was heard by Shannon Frison, J.,
on motions for summary judgment.
      Benjamin B. Tymann for the plaintiffs.
      Bridget Bradley, First Assistant City
Solicitor, for planning board of Framingham.
      Michael A. Kelly for Leonard P. Belli
& another.
      HODGENS, J.  Following public hearings, codefendant
planning board of Framingham (board) granted zoning relief to codefendant
Universal Property Management, LLC (applicant), for the construction of a
carwash and coffee shop.  The plaintiff
homeowners (plaintiffs or abutters) appealed by filing a complaint in the
Superior Court.  A judge allowed motions
for summary judgment filed by the board and the applicant, concluding that the
abutters lacked standing and that they had failed to support a claim that the
board's decision was arbitrary or capricious. 
Although we conclude that the abutters have standing, we discern no
error on review of the merits of the board's action and affirm.
      Background.  On July 1, 2021, the applicant petitioned the
board for zoning relief on seven contiguous parcels along Worcester Road (Route
9) to raze existing structures and build a carwash and adjoining coffee shop
(project).  The parcels are positioned
between Wheeler Avenue and Curve Street within a district zoned for business
and a highway corridor overlay.  Pursuant
to the Framingham zoning bylaws, the applicant sought approval of its site plan
as well as five special permits for carwash use, fast food service, drive-thru
operation, land disturbance and stormwater management, and public way
access.  The board held two public
hearings on July 22 and August 5 and unanimously approved the requested relief
at a public meeting on August 19.  On
September 3, an eleven-page decision followed, approving the plan and special
permits and including forty-eight conditions.
      On September 21, the abutters, who reside
on Curve Street, filed their complaint in the Superior Court.  They claimed that the board's decision was
arbitrary, capricious, and legally untenable, and they sought review through
G. L. c. 40A, § 17, as well as through an action in the nature
of certiorari under G. L. c. 249, § 4.  Specifically, they alleged that the project
would harm their property interests by causing "severe safety
concerns," substantially increased vehicle traffic, and other adverse
impacts related to noise, odor, health, visual, stormwater, and environmental
conditions.  Expert affidavits followed
(discussed more fully below) after the board and the applicant filed motions
for summary judgment.  The abutters
produced an affidavit from a professional engineer who offered opinions on traffic
safety, and the applicant produced affidavits from two professional engineers
generally rejecting any suggestion that the project would cause adverse impacts
of any kind.  Among other things, the
abutters' expert opined that some of the vehicles leaving the proposed
businesses would exit onto Curve Street, where the abutters lived, and that the
unusual configuration of Curve Street would lead to significant traffic safety
concerns.  Allowing the motions for
summary judgment filed by the board and the applicant, the judge viewed the
abutters' claims as "insufficient to support standing" and further
concluded that the abutters failed to produce any support for the claim that
the board acted in an arbitrary or capricious manner.
      Discussion.  1. 
Challenging decision of permit granting authority.  As an initial matter, a challenge to a
decision of a permit granting authority is governed by G. L. c. 40A,
§ 17.  That statute directs parties
seeking to appeal the decision to file a civil complaint with a request that a
court annul the decision.  Id.  An action in the nature of certiorari,
however, is available to correct errors in proceedings "not otherwise
reviewable by motion or by appeal." 
G. L. c. 249, § 4. 
Put another way, a court's power to exercise certiorari review provides
a remedy where none would otherwise exist. 
See Cumberland Farms, Inc. v. Planning Bd. of Bourne, 56 Mass. App. Ct.
605, 608 (2002).  Because "a zoning
appeal pursuant to G. L. c. 40A, § 17, provided a reasonably
adequate remedy in this case," certiorari was not available.  Id. 
Review of the board's decision is, therefore, properly limited to the
standards developed under G. L. c. 40A, § 17.
      2. 
Standing.  We apply de novo review
to the judge's summary judgment decision on standing.  Stone v. Zoning Bd. of Appeals of Northborough,
496 Mass. 366, 373 (2025), citing 81 Spooner Rd., LLC v. Zoning Bd. of Appeals
of Brookline, 461 Mass. 692, 699 (2012). 
"Courts are not established to enable parties to litigate matters
in which they have no interest affecting their liberty, rights or
property."  Hogarth-Swann v. Weed,
274 Mass. 125, 132 (1931).  "[T]o
preserve orderly administrative processes and judicial review thereof, a party
must meet the legal requirements necessary to confer standing."  Save the Bay, Inc. v. Department of Pub.
Utils., 366 Mass. 667, 672 (1975). 
"Standing is the gateway through which one must pass en route to an
inquiry on the merits."  Reynolds v.
Zoning Bd. of Appeals of Stow, 88 Mass. App. Ct. 339, 345 (2015).  "[A] plaintiff ultimately bears the burden
of establishing standing." 
Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 213
(2020).
      a. 
Presumption of standing.  Only a
municipal officer or board or a "person aggrieved by a decision of the
board of appeals or any special permit granting authority" may challenge
that decision in court.  G. L.
c. 40A, § 17.  See 81 Spooner
Rd., LLC, 461 Mass. at 700 n.12 (status as aggrieved person under G. L.
c. 40A, § 17, is "jurisdictional prerequisite" for judicial
review).  "Abutters are entitled to
a rebuttable presumption that they are 'aggrieved' persons under the Zoning Act
[(G. L. c. 40A)] and, therefore, have standing to challenge a
decision of a zoning board of appeals [or other permit granting
authority]."  Id. at 700.
      Based upon our review of the record (and
our view that the 2024 amendments to G. L. c. 40A, § 17, do not
apply to the circumstances presented here),[3] we conclude that the plaintiffs,
who own properties within the requisite proximity to the proposed project,
enjoyed presumptive standing as abutters. 
Plaintiffs Lauren Dobish and Paul Rutherford are direct abutters, and
plaintiff Sara Cline is an abutter to an abutter within 300 feet of the subject
property.  Given their distinctive
locations in relation to the subject property, the plaintiffs are presumed to
be "person[s] aggrieved" under G. L. c. 40A,
§ 17.  See, e.g., Choate v. Zoning
Bd. of Appeals of Mashpee, 67 Mass. App. Ct. 376, 381 (2006) ("direct
abutter" and "abutter to an abutter within 300 feet of the subject property"
presumptively qualify as "persons aggrieved").
      This presumption arises in these
circumstances because the application to the board for the special permits
triggered repeated notices to the abutters with status as "[p]arties in
interest."  G. L. c. 40A,
§ 11.  Notice of a public hearing
regarding the application for a special permit pursuant to G. L.
c. 40A, § 9, must be provided to "the petitioner, abutters,
owners of land directly opposite on any public or private street or way, and
abutters to the abutters within three hundred feet of the property line of
the" property at issue.  G. L.
c. 40A, § 11.  Such notice is a
"critical feature of the statutory zoning scheme" to provide an
"opportunity for interested parties to be heard."  Kramer v. Zoning Bd. of Appeals of
Somerville, 65 Mass. App. Ct. 186, 192 (2005). 
A "public hearing provides an 'opportunity for interested persons
to appear and express their views pro and con.'"  Id. at 190, quoting Milton Commons Assocs. v.
Board of Appeals of Milton, 14 Mass. App. Ct. 111, 114-115 (1982).  After the board renders its decision, notice
of that decision must also be provided to the abutters.  G. L. c. 40A, §§ 9, 11.  These notices "must be provided by the
board or its agent."  Kramer, supra
at 190.  Such elaborate notice and public
hearing procedures invited the abutters, as parties in interest, to participate
in the proceedings and distinguished them from others who "have no
interest" in the subject of the litigation.  Hogarth-Swann, 274 Mass. at 132.  The unique interest of property owners living
in close proximity to the proposed development cannot be understated because
the "primary purpose of zoning with reference to land use is the
preservation in the public interest of certain neighborhoods against uses which
are believed to be deleterious to such neighborhoods."  Circle Lounge & Grille, Inc. v. Board of
Appeal of Boston, 324 Mass. 427, 431 (1949).
      b. 
Rebutting the presumption.  Our
inquiry regarding standing does not end here. 
Notwithstanding the presumption that initially carries the abutters
"over the jurisdictional threshold," if evidence shows that the
abutters are not actually aggrieved at all, then they will necessarily lack the
standing to obtain judicial review. 
Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957).  "[S]tanding to challenge a zoning
decision is conferred only on those who can plausibly demonstrate that a
proposed project will injure their own personal legal interests and that the
injury is to a specific interest that the applicable zoning statute, ordinance,
or bylaw at issue is intended to protect" (emphasis omitted).  Standerwick v. Zoning Bd. of Appeals of
Andover, 447 Mass. 20, 30 (2006).  The
presumption may be rebutted "by offering evidence 'warranting a finding
contrary to the presumed fact.'"  81
Spooner Rd., LLC, 461 Mass. at 700, quoting Marinelli v. Board of Appeals of
Stoughton, 440 Mass. 255, 258 (2003).
      Here, in response to the abutters'
allegation that the project would cause harm through conditions relating to
safety, traffic, noise, odor, health, aesthetics, stormwater, and the
environment, the applicant produced two affidavits from professional engineers
(transportation engineer and civil engineer) disputing each of the abutters'
asserted injuries.  According to the
transportation engineer, using conservatively high estimates, a traffic study
predicted that the project would generate traffic consisting of 270 vehicles
during peak weekday hours with only a portion of Curve Street bearing most of
this new traffic.  Addressing the
remaining matters raised by the abutters, the civil engineer drew the following
conclusions:  a noise-level study
predicted that noise from vacuums and other carwash equipment would not rise
above the ambient noise generated by Route 9 traffic; given the 50,000 vehicles
traversing Route 9 each day, air quality would be "unaffected" by
vehicles queuing up for the carwash and would not have an impact on odor,
health, or the environment; a proposed vegetative buffer comports with the
bylaws and would "enhance" the aesthetic appearance of the subject
property; and the planned stormwater drainage system complies with all local
and State regulations, would divert stormwater into a closed system away from
the plaintiffs' properties, and "would not result in any adverse
impacts."  We are persuaded that
these affidavits successfully rebutted the abutters' presumed status as
aggrieved parties by providing evidence that the "allegations of harm are
unfounded or de minimis" at this stage of the proceedings.  81 Spooner Rd., LLC, 461 Mass. at 702.  See Standerwick, 447 Mass. at 34-35
("abutter is presumed to have standing until the defendant comes forward with
evidence to contradict that presumption"); Marinelli, 440 Mass. at 258
(presumption rebutted by evidence "warranting a finding contrary to the
presumed fact" that abutter is aggrieved).
      c. 
Review of standing based on all the evidence.  "Once the presumption of standing has
been rebutted successfully, the plaintiff then would have the burden of
presenting credible evidence to substantiate the allegations of aggrievement,
thereby creating a genuine issue of material fact whether the plaintiff has
standing and rendering summary judgment [on standing] inappropriate."  81 Spooner Rd., LLC, 461 Mass. at 703
n.15.  "[E]stablishing standing
requires a plaintiff to do more than merely allege a zoning
violation."  Murchison, 485 Mass. at
214.  "Aggrievement requires a
showing of more than minimal or slightly appreciable harm."  Kenner v. Zoning Bd. of Appeals of Chatham,
459 Mass. 115, 121 (2011).  "The
adverse effect on a plaintiff must be substantial enough to constitute actual
aggrievement such that there can be no question that the plaintiff should be
afforded the opportunity to seek a remedy."  Id. at 122. 
"A party challenging a board's decision need not prove by a
preponderance of the evidence that his or her claim of particularized injury is
true."  Krafchuk v. Planning Bd. of
Ipswich, 453 Mass. 517, 523 (2009).
      The abutters here produced an affidavit
from a professional engineer who expressed a different view on the traffic
safety issue.  He noted a deficiency in
the site plan that called for widening only a portion of Curve Street to
accommodate increased traffic and noted a failure to include sidewalks.  He also noted that less than seventy-five
feet from the entrance/exit driveway of the subject property, Curve Street
takes a sharp turn that "presents traffic safety risks related to limited
sight distances and vehicle off-tracking into opposing traffic" when
utilizing the driveway.
      Viewing all the summary judgment
materials, including the affidavits and deposition testimony, in a light most
favorable to the abutters, we cannot say that those materials establish that
the abutters had "no reasonable expectation of proving a legally
cognizable injury" (quotation and citation omitted).  Standerwick, 447 Mass. at 35.  Indeed, witness testimony disputed whether
the proposed project would pose a risk to the safety of pedestrians and motorists
(including the abutters) on the abutters' street -- the applicant's engineer
asserted that there would be no impact on traffic safety, but the abutters'
engineer asserted that safety of motorists and pedestrians would be compromised
in several fact-based respects.  Also,
plaintiff Rutherford's deposition testimony indicated that increased traffic
posed a safety risk because Curve Street has "no real sidewalks" and
contains a "blind curve" and a "narrow entryway" that
requires drivers to turn "really quickly or wide."  Plaintiff Cline, who has lived on Curve
Street since 1984, testified about her knowledge of traffic patterns in the
neighborhood and indicated that the plan would result in "about four or five
people all coming together at the same point."  See 81 Spooner Rd., LLC, 461 Mass. at 704 (lay
witness deposition testimony may establish standing); Krafchuk, 453 Mass. at
524 (reasonable "to rely on lay witness testimony" on standing
issue).
      Based on the foregoing, the abutters
offered sufficient evidence to "substantiate the allegations of
aggrievement," 81 Spooner Rd., LLC, 461 Mass. at 703 n.15, by showing
"that as a result of the board's decision, there was a reasonable
likelihood of harm to [their] propert[ies] and that the harm was of the type against
which the [Zoning] Act is intended to protect," Bedford v. Trustees of
Boston Univ., 25 Mass. App. Ct. 372, 378 (1988).  Assuring adequate traffic safety in the
neighborhood is a perfectly appropriate consideration for the board.  See St. 1975, c. 808, § 2A (Zoning
Act designed, in part, to "lessen congestion in the streets;
. . . [and] facilitate the adequate provision of
transportation"); Framingham Zoning Bylaw § VI(E)(3)(b)(i) (special
permit conditions may be imposed for "purposes of safety"); Framingham
Zoning Bylaw § VI(F)(1) (purpose of site plan review "is to protect
the health, safety, quality of life, and general welfare of the
community").
      Apart from the traffic safety issue, the
abutters did not offer any evidence to substantiate their claims relative to
noise, odor, health, aesthetics, stormwater, and the environment.  "Where plaintiffs allege several claims
of aggrievement, they only need to satisfy their burden of proof with respect
to one claim in order to establish standing."  81 Spooner Rd., LLC, 461 Mass. at 704
n.16.  They have done so here with
respect to one claim.  By meeting their
burden of proof with respect to traffic safety, the abutters have established
standing.  See, e.g., Marashlian v.
Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 722 (1996) (concerns about
"increased traffic" legitimately within scope of zoning laws);
Bedford, 25 Mass. App. Ct. at 377 (abutter's nonspeculative concerns of
increased pedestrian and vehicular traffic and pedestrian safety sufficient to
confer standing).
      3. 
Review of board decision on the merits. 
Although the abutters provided sufficient evidence to establish
standing, such does not mean that they succeed on their claim on the merits.  The inquiry on the merits is narrow and distinct
from the question of standing and requires a court to "hear all evidence
pertinent to the authority of the board . . . and determine the
facts, and . . .  annul such
decision if found to exceed the authority of such board."  G. L. c. 40A, § 17.  See Marashlian, 421 Mass. at 721
(distinguishing review of "all the evidence" for purposes of standing
from review of claims on the merits [citation omitted]).  In her decision allowing summary judgment for
the board, the judge concluded, "The Board fairly and reasonably viewed
and acted on the evidence presented by [the applicant].  In its decision, the [b]oard followed the
appropriate decisional criteria and set forth reasons for its decision."  "We review de novo the allowance of a
motion for summary judgment, viewing the facts 'in the light most favorable to
the party against whom judgment entered.'" 
Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372, 376
(2019), quoting 81 Spooner Rd., LLC, 461 Mass. at 699.  We agree with the judge and discern no basis
to annul the decision of the board.
      Zoning regulations are not intended to be
"technical requirement[s] difficult of performance by the
unwary."  Kane v. Board of Appeals
of Medford, 273 Mass. 97, 104 (1930). 
Instead, they are "dictated by common sense for protection of an
established neighborhood."  Id.  "Special permit procedures have long
been used to bring flexibility to . . . [zoning classifications]
. . . by providing for specific uses" that may be
"desirable but which are not allowed as of right because of their
potential for incompatibility with the characteristics of the
district."  SCIT, Inc. v. Planning
Bd. of Braintree, 19 Mass. App. Ct. 101, 109 (1984).  "Uses most commonly subjected to special
permit requirements are those regarded as troublesome (but often needed
somewhere in the municipality, for example, gasoline service stations, parking
lots, and automobile repair garages)" and uses "which would be
incompatible in a particular district unless conditioned in a manner which
makes them suitable to a given location." 
Id.  The decision to grant or deny
"special permits is within the discretion" of the special permit
granting authority.  ACW Realty Mgt.,
Inc., v. Planning Bd. of Westfield, 40 Mass. App. Ct. 242, 246 (1996).
      Here, a "detailed record" of the
board's proceedings "clearly" set forth "the reason for its
decision" and evinced a careful examination of the compatibility of the
project with the requirements of the zoning bylaws as well as the safety concerns
raised by the abutters.  G. L.
c. 40A, § 15.  The board
expressly concluded that the project satisfied bylaw requirements related to
"traffic pattern[s]," "hazard[s] to abutters, pedestrians,
vehicles, and/or the environment," and the ability of "[t]raffic and
pedestrians [to] access and circulate the project safely without
conflict."  The board specifically
required the installation of signage prohibiting vehicles from turning right
onto Curve Street, thereby mitigating the impact on properties along a portion
of Curve Street by requiring vehicles to exit the subject property toward Route
9.  Given the board's application of the
appropriate criteria and its evident responsiveness to the concerns of the
abutters, the board did not base its decision "on a legally untenable ground"
nor reach its decision in an "unreasonable, whimsical, capricious or
arbitrary" manner.  MacGibbon v.
Board of Appeals of Duxbury, 356 Mass. 635, 639 (1970).
      The abutters suggest that mere signage is
insufficient traffic mitigation because drivers regularly "take illegal
turns or put convenience and time-saving over compliance with traffic"
rules.  On appeal, we do not pass on the
wisdom or potential efficacy of conditions imposed by the board, which is in
the best position for an "evaluation of the seriousness of the
problem."  Copley v. Board of
Appeals of Canton, 1 Mass. App. Ct. 821, 821 (1973).  See, e.g., Fitzsimonds v. Board of Appeals of
Chatham, 21 Mass. App. Ct. 53, 57 (1985) (local board "brings to the
matter an intimate understanding of the immediate circumstances, of local
conditions, and of the background and purposes of the entire by-law; and so, at
least in the first instance, the board's administrative view is valuable and is
wanted").  Our review of the board's
decision necessarily "involves a highly deferential bow to local control
over community planning."  Britton
v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 73 (2003).  Given these standards and the record before
us, we discern no reason to disturb the board's decision.[4]
Judgment
affirmed.

footnotes

[1] Lauren Dobish
and Paul Rutherford.

[2] Leonard P.
Belli, doing business as Universal Property Management; and Universal Property
Management, LLC.

[3] We do not
believe that the Affordable Homes Act of 2024, St. 2024, c. 150,
§§ 11-13, amending G. L. c. 40A, § 17, can be applied
retroactively, and we offer no further opinion on the substance of those
amendments.  The board issued its
decision on September 3, 2021, the abutters filed their complaint on September
21, 2021, the judge issued her decision on December 13, 2023, and the
amendments became effective thereafter on August 6, 2024.  Given this timeline, the amendments cannot in
fairness be applied retroactively to affect the abutters' standing.  See City Council of Waltham v. Vinciullo, 364
Mass. 624, 628-629 (1974).  Any
retroactive operation of the amendments "should be limited to those cases
in which, on the effective date of the statute, no decision had yet been made
by the [permit granting authority]." 
Id. at 629.

[4] The
applicant's request for appellate attorney's fees is denied.