MAYOR OF SALEM *vs.* WARNER AMEX CABLE
COMMUNICATIONS INC.

Essex. May 9, 1984. — August 8, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Statute,* Retroactive statute. *Community Antenna Television Systems.*
*Municipal Corporations,* Contracts.

A license agreement providing for the construction of a community antenna
television (CATV) system and for operation of the system during a
period of fifteen years, entered into in 1977 between a corporation and
the mayor of Salem, acting pursuant to G. L. c. 166A, §§ 1 (*d*) and 3,
was not to be governed by the subsequent amendment to G. L. c. 166A,
§ 15, accomplished by St. 1979, c. 249, § 3, which authorized the
Community Antenna Television Commission to suspend regulation of
rates and charges to CATV subscribers in certain municipalities and
under certain conditions. [666-669]

CIVIL ACTION commenced in the Superior Court Department
on May 19, 1983.

The case was heard by *Brady, J.,* on a motion for summary
judgment.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Mary P. Harrington,* Assistant City Solicitor, for the plain-
tiff.

*Walter H. Mayo, III,* for the defendant.

NOLAN, J. The issue presented in this case is whether the
1979 amendment to G. L. c. 166A, § 15 (St. 1979, c. 249, § 3[1]),

---

[1] Statute 1979, c. 249, § 3, added the following language to the first
paragraph of G. L. c. 166A, § 15: "Notwithstanding any other provision
of this paragraph, the commission may, after due hearing and investigation,
suspend regulation of rates and charges in any cable television system upon
a finding that adequate competitive alternatives exist to the provision of

and the regulations promulgated thereunder,[2] apply to a license issued by the mayor of the city of Salem (Salem) to Warner Cable of Salem, Inc.[3] (Warner), which granted Warner the right to construct and operate a community antenna television (CATV) system. The parties entered into this license agreement on July 7, 1977, nearly two years before the effective date of the amendment. We conclude that the 1979 amendment, as well as the newly promulgated regulations, do not apply to the Warner license. Therefore, we reverse the judgment of the Superior Court and order that a judgment be entered in favor of Salem which declares the rights of the parties. *Boston* v. *Massachusetts Bay Transp. Auth.,* 373 Mass. 819, 829 (1977).

On July 7, 1977, Salem granted Warner a fifteen-year license to construct and operate a CATV service in the city. Salem derived its authority to grant such a license from G. L. c. 166A, §§ 1 (*d*) & 3. Paragraph 10 of the license agreement provided that "[t]he subscriber shall pay to the Licensee for the regular service received hereunder, the following charges [detailed in the contract], *which shall not be changed except pursuant to the provisions of General Laws c. 166A and any rules and regulations of the Massachusetts CATV Commission promulgated thereunder*" (emphasis supplied).

The regulations in effect at the time the parties entered into the agreement required the licensee to file a petition with the issuing authority, i.e., the municipality, when requesting a rate change. The issuing authority, upon receiving the petition,

---

services offered by cable television systems. In the event of such a suspension, the commission shall, by oversight and surveillance, review periodically any facts or standards employed in determining the presence of said competition."

[2] The Community Antenna Television Commission (Commission) in 1980 promulgated regulations which effectively deregulated rates and charges in cities and towns where adequate competitive alternatives exist. 207 Code Mass. Regs. §§ 6.51-6.58 (1980). The Commission found that adequate competitive alternatives existed in Salem. See Community Antenna Television Commission, Doc. No. R-4, Competitive Standard Rulemaking Report and Order, App. A, at iii (1980).

[3] Warner Cable of Salem, Inc., has since been dissolved and has been succeeded by Warner Amex Cable Communications Inc.

was obligated to conduct a public hearing and file a report with the Community Antenna Television Commission (Commission) and with all parties. 207 Code Mass. Regs. §§ 6.04-6.05 (1975). A licensee adversely affected by the issuing authority's report could file a subsequent petition with the Commission, which was then obligated to conduct a hearing de novo. No change in the rates and charges could become effective except upon the issuance of a certificate of verification or order by the Commission. 207 Code Mass. Regs. § 6.06 (1975).

In 1979, the Legislature amended G. L. c. 166A, § 15. St. 1979, c. 249, § 3. This amendment authorized the Commission to suspend rate regulation in cities and towns where competitive alternatives exist.[4] On July 25, 1980, after extensive investigation and research, the Commission issued its Competitive Standard Rulemaking Report and Order, Docket No. R-4, which essentially outlined and defined the competitive alternative standard. The Commission also promulgated regulations governing the application of the competitive alternative standard. 207 Code Mass. Regs. §§ 6.51-6.53 (1980).

In those municipalities where the Commission suspends regulation, a licensee need only file with the Commission and the issuing authority a schedule of all changes in the rates and charges thirty days prior to the effective change. 207 Code Mass. Regs. § 6.55 (1980). In its report and order, the Commission suspended regulation of rates in numerous cities, including Salem. A city with a consolidated cable system meeting the competitive alternative standard in 207 Code Mass. Regs. § 6.53 (1980) may initiate a proceeding to show that adequate competitive alternatives to regular service do not exist. 207 Code Mass. Regs. § 6.56 (2) (1980). The record does not indicate that Salem initiated such a proceeding.

Warner notified Salem of its intent to increase rates and charges. These rates and charges were subsequently increased

---

[4] The competitive alternative standard is defined in 207 Code Mass. Regs. § 6.53 (1980) as follows: "Adequate competitive alternatives to regular cable television service exist in any cable system which is located wholly within the predicted Grade B contour of three unduplicated network signals and which has a subscriber saturation level of 70% or less."

on January 1, 1983. As a result, Salem instituted a complaint seeking a declaration that G. L. c. 166A, § 15, as amended through St. 1979, c. 249, § 3, and the regulations promulgated pursuant to the amendment, do not apply to Warner's license. In the alternative, Salem requested that the license be declared null and void as the intent and purposes of Salem would be frustrated by application of the amended law. Cross motions for summary judgment were filed by Salem and Warner. The judge granted Warner's motion for summary judgment, denied Salem's motion for summary judgment, and entered judgment in favor of Warner. Salem appealed, and we transferred the case to this court on our own motion.

Warner argues that G. L. c. 166A, § 15, as amended through St. 1979, c. 249, § 3, and the regulations promulgated thereunder, apply to the license agreement for three reasons: (1) the language of paragraph 10, which subjects proposed rate changes to G. L. c. 166A and any rules and regulations promulgated by the Commission, demonstrates that the parties contemplated application of future amendments; (2) the statutory language found in the amendment indicates that the Legislature intended retroactive application of the amendment to licenses issued prior to the amendment; and (3) Salem's authority to regulate rate changes and to issue licenses was freely revocable by the Legislature at any time. We are unpersuaded by these arguments.[5]

First, the language in paragraph 10 of the license agreement does not indicate that the parties intended future amendments to G. L. c. 166A and to the regulations promulgated thereunder to apply to the license agreement. As a general rule, the law in existence at the time an agreement is executed necessarily becomes part of the agreement. *Feakes* v. *Bozyczko,* 373 Mass. 633, 636 (1977). Amendments enacted after execution are not incorporated into an agreement unless the contract provi-

---

[5] It is important to note that neither party has raised a constitutional argument based on the contract clause of the United States Constitution. We therefore need not address this issue. *Commonwealth* v. *Appleby,* 389 Mass. 359, 375 n.27 (1983). Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

sions "clearly establish that the parties intended to incorporate subsequent enactments into their agreement." *Id.* We must therefore examine the expectations and intentions of the parties at the time the agreement was executed.

We find the omission of the words "and amendments thereto" in paragraph 10 of the license agreement significant. See *United States Mortgage Co.* v. *Matthews,* 293 U.S. 232, 237 (1934). At the time the contract was entered into, the regulations required the licensee to file a petition of proposed rate changes initially with the issuing authority. This afforded the municipality considerable control over any increases in rates to subscribers. 207 Code Mass. Regs. §§ 6.04-6.05 (1975). Paragraph 10 of the license agreement sets forth a comprehensive rate scheme which limits the amounts to be charged to subscribers. Clearly this detailed approach demonstrates Salem's concern with control over rate increases, and Warner's acquiescence in the exercise of that control. Salem, therefore, relied on its power to screen, through public hearing, any proposed rate changes. 207 Code Mass. Regs. §§ 6.04-6.05 (1975). The parties never intended to include future amendments to G. L. c. 166A, § 15, which effectively deregulate rates and charges and leave Warner with absolute control over the amount of increase.

Second, Warner's argument that the Legislature intended that the amendment operate retroactively to supersede the provisions of the license agreement is also without merit. "The general rule of interpretation is that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations." *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 626 (1974), quoting *Hanscom* v. *Malden & Melrose Gas Light Co.,* 220 Mass. 1, 3 (1914). Unless statutory language is clear and unambiguous, an amendment affecting substantive rights will have prospective effect only. *Hein-Werner Corp.* v. *Jackson Indus., Inc.,* 364 Mass. 523, 525 (1974).

Warner argues that the language in the amendment which provides "the commission may . . . suspend regulation of rates and charges in any cable television system upon a finding that adequate competitive alternatives exist," indicates that suspension of rate regulation was intended to supersede any rate regulatory provisions in existing licenses. We do not agree. Nothing in the amendment indicates retroactive intent. Contrast *Massachusetts Ass'n for the Blind* v. *Assessors of Brookline,* 391 Mass. 384, 390-391 (1984). The amendment, if applied to the license agreement, would effectively alter a substantive provision in the contract. The alteration is neither procedural nor does it affect only the remedies of the parties. *City Council of Waltham* v. *Vinciullo, supra.* In the absence of language indicating retroactive intent, we decline to apply this amendment to the license agreement.

Finally, the defendant suggests that the Legislature, through the statutory amendment, and the Commission, through the newly promulgated regulations, are merely revoking Salem's powers to regulate rates and charges. We acknowledge the Legislature's authority to confer directly or indirectly through the Commission the power to regulate rates upon a city or town and also to reassume those powers at will. See *Warner Cable of Mass. Inc.* v. *Community Antenna Television Comm'n,* 372 Mass. 495, 503-504 (1977); *Opinion of the Justices,* 334 Mass. 721, 735-736 (1956); *Boston Provincetown S.S. Line* v. *Selectmen of Provincetown,* 323 Mass. 725, 729 (1949). We also agree that the Legislature, through St. 1979, c. 249, § 3, has permitted the Commission to deregulate or suspend government rate regulation in cities and towns where competitive alternatives exist, and has allowed free competition to regulate the rates and charges in those areas. The resultant addition of regulations merely recaptures, in those cities and towns where adequate competitive alternatives exist, the power to review rate increases which had previously been granted.

However, as discussed earlier in this opinion, we believe that the Legislature did not intend to reassume those powers retroactively. The Commission, prior to the effective date of

the amendment, had no authority to suspend regulation of rates and charges in cities and towns where adequate competitive alternatives existed. This new authority cannot be applied retroactively to Warner's license agreement. The resultant alteration of the substantive rights of the parties would be unwarranted in the absence of clear retroactive intent.

Moreover, sound public policy dictates the extension of Salem's authority to control increases in rates and charges for the period of the contract. The contract for services was executed in accordance with specific statutory authority, and was made in good faith and for the public benefit. Therefore, it should be enforced as the parties intended. Cf. *Woburn Golf & Ski Auth.* v. *Woburn Country Club, Inc.,* 365 Mass. 415, 419 (1974); *Duggan* v. *Taunton,* 360 Mass. 644, 650-651 (1971).

For these reasons, we conclude that the regulations in effect prior to the effective date of St. 1979, c. 249, § 3, govern the Warner license.[6] We reverse the judgment in favor of Warner and order judgment entered in favor of Salem. However, summary judgment with no declaration of rights is generally not appropriate in a declaratory judgment action. *Boston* v. *Massachusetts Bay Transp. Auth.,* 373 Mass. 819, 829 (1977). Thus we order that the judgment declare that the license agreement is not subject to St. 1979, c. 249, § 3, or to the subsequently promulgated regulations.

*So ordered.*

---

[6] We need not address Salem's frustration of purpose argument, because we hold that G. L. c. 166A, § 15, as amended through St. 1979, c. 249, § 3, does not apply to the license agreement.