Betty Lou BUTLER, Plaintiff,

v.

RMS TECHNOLOGIES, INC.,
Defendant.

Civ. A. No. 89-0822-S.

United States District Court,
D. Massachusetts.

July 12, 1990.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO DISMISS

SKINNER, District Judge.

The plaintiff, a black woman, filed this action alleging racial discrimination in employment. The amended complaint pleads two counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and one count each under 42 U.S.C. § 1981, M.G.L. c. 12, § 11I, and M.G.L. c. 93, § 102. The defendant has moved to dismiss the § 1981 and state law claims.

*Plaintiff's Allegations*

According to the complaint, the defendant hired the plaintiff in Pennsylvania in 1981. In September 1985, after two pro-

motions, the plaintiff was transferred to Lexington, Massachusetts to work as a data management specialist. The plaintiff was the defendant's only black employee in Lexington. In December 1985, the plaintiff began complaining to her supervisor and other company officials about discriminatory treatment. Unlike her white co-workers, she was given negative performance appraisals, was denied salary increases, and was not allowed to attend meetings and seminars necessary to effective job performance. Beginning in early 1986, the plaintiff complained to company officials that suspected co-workers were making "unwelcome" telephone calls to her at home at night in which they made "racially offending and derogatory remarks." Despite her numerous complaints, the defendant did not take appropriate action to end this harassment. In January 1987, the defendant fired the plaintiff on the pretext that she was insubordinate in sending an objectionable electronic communication to her supervisor. White employees were not fired for similar acts. Her discharge was in retaliation for her complaints about racial discrimination.

*Count III: 42 U.S.C. § 1981*

██ The defendant maintains that the plaintiff's § 1981 claim is precluded by *Patterson v. McLean Credit Union,* — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which holds that relief is not available under § 1981 for harm caused by discriminatory job conditions after an employment relationship has been established.[1]

Section 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penal-

ties, taxes, licenses, and exactions of every kind, and to no other.

In *Patterson,* the Court stated:

Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts....

By its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII....

The second of these guarantees, "the same right ... to ... enforce contracts ... as is enjoyed by white citizens," embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race.... It also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in

---

1. Because counsel's assistance is helpful in understanding the implications of *Patterson,* I shall excuse the plaintiff's seven-month delay in opposing this motion. The plaintiff's motion

for leave to file a late response and the defendant's motion for leave to file a reply are both **allowed.**

enforcing the terms of a contract.... The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights....

. . . . .

... § 1981 ... covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process.

109 S.Ct. at 2372-73, 2374.

*Patterson* expressly held that claims based on racial harassment, denial of salary increases, and other discriminatory job conditions are not cognizable under § 1981. 109 S.Ct. at 2373-74. Accordingly, the plaintiff's similar claims under Count III must be dismissed. Her claim for discriminatory firing, though, presents a separate issue not reached in *Patterson*.

■ Most courts that have decided this issue have held that the rationale of *Patterson* precludes claims for discriminatory discharge under § 1981. See, e.g., *McKnight v. General Motors Corp.*, 902 F.2d 244 (7th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807-08 (5th Cir.1990); *Overby v. Chevron USA, Inc.*, 884 F.2d 470, 473 (9th Cir. 1989). Cf. *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir.1990) (rejecting claim for retaliatory interference with plaintiff's subsequent employment on similar grounds). To date, only one court of appeals has held that racially motivated discharge is still actionable under § 1981. *Hicks v. Brown Group, Inc.*, 902 F.2d 630 (8th Cir.1990). The majority opinion in *Hicks*, however, follows the logic of the dissenters in *Patterson*, and in my opinion it is inconsistent with the teaching of *Patterson*.

The Court's restrictive reading of § 1981 is explained in part by the Court's desire to minimize the overlap between § 1981 and Title VII, fostering the administrative resolution of employment claims under Title VII. See 109 S.Ct. at 2375. As in *Patterson*, that consideration militates against permitting the plaintiff's § 1981 claim for wrongful discharge. The Court noted that the necessary overlap between the statutes regarding refusal to hire makes sense because Title VII's mediation and conciliation procedures are less effective before there is an employee-employer relation to salvage. 109 S.Ct. at 2375. Despite her termination, the plaintiff's five-year relationship with the defendant formed a basis for administrative mediation and conciliation. But see *Hicks*, 902 F.2d at 640-41 (after discharge, "there is no relationship to salvage"). Accordingly, the circumstances of the plaintiff's discharge, like the conditions of her employment, are "more naturally governed by ... Title VII." 109 S.Ct. at 2373.

■ The plaintiff also asserts that the defendant interfered with her right to enforce her employment agreement by complaining about disparate treatment. Except for certain cases of retaliatory discharge, however, wrongful termination does not impair the right to *enforce* a contract. See, e.g., *Hicks*, 902 F.2d at 638-39 n. 20. But see *Birdwhistle v. Kansas Power and Light Co.*, 723 F.Supp. 570, 575 (D.Kan.1989) (discharge is directly related to contract enforcement). Since the plaintiff was not pursuing legal redress or other adjudicative procedures but was simply complaining to her superiors, the defendant's firing her did not violate her right to enforce her employment contract under § 1981. See *Patterson*, 109 S.Ct. at 2373.

### Count IV: M.G.L. c. 12, § 11I

■ The complaint alleges disparate treatment, racial harassment by co-workers, and racially motivated, retaliatory discharge. M.G.L. c. 12, § 11I provides a remedy for racial harassment. *O'Connell v. Chasdi*, 400 Mass. 686, 511 N.E.2d 349, 353 (1987) (extending remedy to sexual harassment by private defendants, based on right to equality). The complaint alleges that the plaintiff's co-workers made "unwelcome" telephone calls in which they subjected her to "racially offending and derogatory remarks." Although the plaintiff was not assaulted, like the plaintiff in

*O'Connell*, whether these calls actually threatened or intimidated her is a question of fact.

The plaintiff's harassment claim under M.G.L. c. 12, § 11*I* is nevertheless precluded by the specific remedy for employment discrimination accorded by M.G.L. c. 151B. Cf. *Mouradian v. General Electric Co.*, 23 Mass.App. 538, 503 N.E.2d 1318, 1321, *rev. denied*, 399 Mass. 1105, 507 N.E.2d 1056 (1987) (wrongful discharge based on age discrimination); *Sereni v. Star Sportswear Mfg. Corp.*, 24 Mass.App. 428, 509 N.E.2d 1203, *rev. denied*, 400 Mass. 1107, 513 N.E.2d 1289 (1987) (following *Mouradian*). But cf. *O'Connell*, 511 N.E.2d at 353 n. 9 (expressing no opinion whether M.G.L. c. 151B, § 4 would be exclusive remedy against covered employers for sexual harassment, since defendant employer was not covered by c. 151B).

■ The other discriminatory acts alleged do not involve "threats, intimidation or coercion" as construed under M.G.L. c. 12, §§ 11H and 11*I*. *Marsman v. Western Elec. Co.*, 719 F.Supp. 1128, 1138 (D.Mass. 1988) (negative employment decision alone does not constitute threats, intimidation, or coercion); *Appling v. City of Brockton*, 649 F.Supp. 258, 261 (D.Mass.1986) (same); *Mouradian*, 503 N.E.2d at 1321 n. 5 (same) (dictum). A violation of M.G.L. c. 12, § 11*I* requires "an actual or potential physical confrontation accompanied by a threat of harm." *Layne v. Superintendent, Massachusetts Correctional Institution*, 406 Mass. 156, 546 N.E.2d 166 (1989) (physical barrier to access by handicapped plaintiffs not coercive). See also *Bally v. Northeastern University*, 403 Mass. 713, 532 N.E.2d 49, 52–53 (1989) (no actionable threat in mandatory drug testing of school athletes). There must be something akin to duress which causes the victim to relinquish her rights.[2] A direct deprivation of rights, as by the alleged wrongful termination here, lacks the quality of coercion. See *Longval v. Comm'r of Correction*, 404 Mass. 325, 535 N.E.2d 588, 593 (1989) (use of force by prison officials); *Pheasant Ridge Assocs. Ltd. Partnership v. Town of Burlington*, 399 Mass. 771, 506 N.E.2d 1152, 1158–59 (1987) (wrongful taking of property).

■ The plaintiff alleges that in addition to unlawfully discriminating against her the defendant violated her right to free speech. See *Bally*, 532 N.E.2d at 52 (defendant violates M.G.L. c. 12, §§ 11H and 11*I* when its cancellation of contract coerces plaintiff not to exercise right to free speech), citing *Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 502 N.E.2d 1375 (1987). Since the gravamen of this claim is retaliation for complaints about employment discrimination, it is likely that *Mouradian* precludes it also. In any case, even if the plaintiff had a constitutionally protected right to voice her complaints in the workplace, the alleged retaliatory discharge did not silence her through "threats, intimidation or coercion." Based on the recent Massachusetts cases cited above, I disagree with the ruling in *Karetnikova v. Trustees of Emerson College*, 725 F.Supp. 73, 78 (D.Mass.1989), that silencing employment-dependent speech through job termination may constitute coercive deprivation of First Amendment rights. The claim in *Redgrave* concerned the coercive effect of economic sanctions on the plaintiff's right to engage in unrelated political speech.

Because I have ruled that Count IV fails to state a claim, I need not decide whether the amended complaint "relates back" to the time the action was commenced for the purpose of applying the statute of limitations.

---

**2.** The Supreme Judicial Court has adopted the following dictionary definition of coercion: "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Deas v. Dempsey*, 403 Mass. 468, 530 N.E.2d 1239, 1241 (1988), quoting Webster's New International Dictionary at 519 (2d ed. 1959). See also *Delaney v. Chief of Police of Wareham*, 27 Mass.App. 398, 539 N.E.2d 65, 72 (1989), which defines *threat* as "acts or language by which another is placed in fear of injury or damage;" *intimidation* as "creation of fear to compel conduct;" and *coercion* as "the active domination of another's will."

*Count V: M.G.L. c. 93, § 102*

■ The Massachusetts equal rights act, 1989 Mass.Acts c. 332, M.G.L. c. 93, § 102, was enacted after this action was filed. Although declared by the Governor to be emergency legislation, the statute does not state that it is to be applied retrospectively.

Under Massachusetts law, statutes dealing with substantive rights, rather than remedies or procedure, are not given retroactive effect in the absence of clear legislative intent. *Lawton v. Commonwealth Gas Co.*, 400 Mass. 209, 508 N.E.2d 611, 613–14 (1987); *Mayor of Salem v. Warner Amex Cable Communications, Inc.*, 392 Mass. 663, 467 N.E.2d 208, 211 (1984). See also *Carter v. Supermarkets General Corp.*, 684 F.2d 187, 191 n. 9 (1st Cir.1982) (citing cases). Procedural statutes may be applied to pending actions if the procedural stage affected by the legislation has not already been passed. *City Council of Waltham v. Vinciullo*, 364 Mass. 624, 307 N.E.2d 316 (1974).

A statute imposing new legal duties and creating a new cause of action for their enforcement is clearly substantive and should be presumed to operate prospectively. The plaintiff argues that M.G.L. c. 93, § 102 merely codifies pre-existing duties under federal law; therefore, it does not affect the defendant's substantive rights and should be applied retroactively.

The plaintiff relies on *Bohner v. Bohner*, 18 Mass.App. 545, 468 N.E.2d 653 (1984), which held that not every statute that creates a new cause of action is substantive. In *Bohner*, the Appeals Court decided that a statute authorizing Massachusetts courts to grant alimony after a foreign divorce would be applied to a New Hampshire divorce that pre-dated the enactment. Since the plaintiff had a pre-existing right to seek alimony in New Hampshire, the court held that the statute in essence only provided an alternative forum and should not be "deemed" to affect substantive rights.

The defendant had no significant right not to be sued in Massachusetts as opposed to New Hampshire. The court likened the alimony statute to the long arm statute and other laws that have retrospectively expanded jurisdiction. The court distinguished *Hay v. Cloutier*, 389 Mass. 248, 254, 449 N.E.2d 361 (1983), which held that the new statutory right to equitable division of property was substantive, therefore prospective.

The plaintiff argues that the equal rights act was enacted to create a state remedial procedure for unlawful discrimination equivalent to that of 42 U.S.C. § 1981 as construed prior to *Patterson, supra.* Contrary to the plaintiff's argument, however, the Massachusetts statute does not merely adopt preexisting federal law. On its face it is broader than 42 U.S.C. § 1981, as construed. For example, it prohibits discrimination on the basis of sex.

Moreover, the plaintiff's argument is self-contradictory. The plaintiff argues that her state claim is not controlled by *Patterson* or later cases construing § 1981.[3] The scope of M.G.L. c. 93, § 102 awaits delineation by the Massachusetts courts. Based on its legislative history, it is almost certain to be given a broader construction than 42 U.S.C. § 1981. Since the plaintiff's substantive federal and state race discrimination claims might ultimately receive different treatment by the highest courts of the two sovereigns, M.G.L. c. 93, § 102 does more than provide a new forum for claims based on the breach of pre-existing federal duties. Indeed, the Governor declared that the statute "gives back job discrimination protections that the U.S. Supreme Court recently took away," referring to *Patterson.* News Release, Aug. 3, 1989 (Ex. 7 to Plaintiff's Mem. filed Apr. 4, 1990). Clearly, the equal rights act deals less "with the 'how' or 'where' of the [anti-discrimination] rights than the 'what' of those rights." *Bohner*, 468 N.E.2d at 656.[4]

---

3. If c. 93, § 102 merely duplicates § 1981, then the plaintiff's state law claim is subject to dismissal for the same reason that her § 1981 fails to state a claim.

4. The plaintiff does not refer in her argument to the pre-existing rights enforceable through Title VII, M.G.L. c. 12, §§ 11H and 11*I*, M.G.L. c. 151B, or the common law. I note, however, that the Massachusetts equal rights act has sig-

The plaintiff makes a weak argument for implied retroactive application based on the purpose of the Massachusetts equal rights act. The legislature's purpose to secure the relief formerly available under § 1981 from erosion by the Supreme Court, the plaintiff argues, would be defeated if the equal rights act were not applied retroactively. In my opinion, the materials submitted by the plaintiff are meager evidence of an intent to make the legislation retroactive when such a purpose could easily have been stated by express language. Any uncertainty in the legislature's intent must be resolved against retroactive application. *Austin v. Boston University Hospital*, 372 Mass. 654, 363 N.E.2d 515, 518 (1977).

In summary, the Massachusetts equal rights act expands upon preexisting law, imposing new substantive duties on private citizens and creating a novel state remedy. There is insufficient evidence of a legislative intent to make the statute retroactive. Observing the general rule, I hold that the equal rights act does not apply to conduct occurring before its effective date, such as that alleged in the complaint. I need not consider the defendant's argument that M.G.L. c. 151B provides the exclusive state remedy for employment-related discrimination.

Accordingly, the defendant's motions to dismiss Counts III, IV, and V are allowed. The plaintiff has no right to a jury trial of her Title VII claims (Counts I and II).

In addition, the plaintiff's motion for an extension of the time for completion of discovery is denied, good cause not having been shown. The plaintiff's lawyer's motion for leave to withdraw his appearance is denied, for the reasons stated in the defendant's opposition. L.R. 7(c).

nificantly broader reach than any of these laws. The historical sources submitted by the plaintiff show that the legislature intended to address perceived wrongs for which there was no available relief under current law.